**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

---

**DOROTHY McGEE** and **MARKEGIOUS POLK**, Individually, and on behalf of themselves and other similarly situated current and former employees,

      Plaintiffs,

        v.

**GARNETT STATION PARTNERS, LLC,**
A Delaware Limited Liability Company,
**CAMBRIDGE FRANCHISE HOLDINGS, LLC,**
a Delaware Limited Liability Company,
**MIRABILE INVESTMENT CORPORATION,**
a Tennessee Corporation, and,
**RAY MEEKS**, **TIM FURR**,
**JOSEPH MIRABILE, MATT PERELMAN**,
**ALEX SLOANE**, and **CHRIS SCHNIEPP**,
Individually,

      Defendants.

NO. _____

FLSA Opt-In Collective Action

**JURY DEMANDED**

---

**COLLECTIVE ACTION COMPLAINT**

---

    Plaintiffs, Dorothy McGee and Markegious Polk, individually, and on behalf of themselves and all other similarly situated current and former employees classified as hourly-paid Shift Leaders, bring this collective action against Defendants and allege as follows:

## I.    <u>INTRODUCTION</u>

1.    This lawsuit is brought against Defendants as a collective action for wage theft under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.,* to recover unpaid minimum wages and unpaid overtime compensation and other damages owed to Plaintiffs and other similarly situated current and former employees, classified as hourly-

paid Shift Leaders by Defendants and, who are members of a class as defined herein and currently or previously employed by Defendants.

2.  Plaintiffs allege that during the relevant statutory period, Defendants classified all of their Shift Leaders as hourly paid, non-exempt employees.  Plaintiffs allege that at all times material herein, they and similarly situated shift leaders worked off the clock at the direction of upper management and had their time shaved or edited in order to stay within a labor budget set by Defendants. As such Plaintiffs seek to form a class of aggrieved current and former shift leader employees, as specified below.

## II.   JURISDICTION AND VENUE

3.  The FLSA authorizes court actions by private parties to recover damages for violations of the FLSA's wage and hour provisions. Jurisdiction over Plaintiff's FLSA claims are based on 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

4.  Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) and (c) because Plaintiffs Dorothy McGee and Markegious Polk were employed by Defendants in this district, as well as resided in this district, at all times relevant to this action. Defendants regularly conducted and continue to conduct business in this district, and have engaged and continue to engage in wrongful conduct alleged herein in this district during all material times in this cause.

## III.   CLASS DESCRIPTION

5.  Plaintiffs bring this action on behalf of the following similarly situated persons:

> All current and former hourly-paid employees, classified by Defendants as Shift Leaders (a/k/a Shift Managers) at their Burger King franchised restaurants and, who were employed by

Defendants in the United States at any time during the applicable limitations period covered by this Collective Action Complaint (*i.e.* two years for FLSA violations and, three years for willful FLSA violations) up to and including the date of final judgment in this matter, and who is a Named Plaintiff or elect to opt-in to this action pursuant to the FLSA, 29 U.S.C. § 216(b). (Collectively, "the class").

### IV.    PARTIES

6.    Plaintiff Dorothy McGee was a resident of this district and, was employed by Defendants as an hourly-paid Shift Leader at one or more of Defendants' Burger King franchised restaurants within this district during the relevant period herein. (Plaintiff McGee's' Consent to Join this collective action is attached hereto as Exhibit A.)

7.    Plaintiff Markegious Polk was a resident of this district and, was employed by Defendants as an hourly-paid Shift Leader at one or more of Defendants' Burger King franchised restaurants within this district, during the relevant period herein. (Plaintiff Polk's Consent to Join this collective action is attached hereto as Exhibit B)

8.    Defendant Garnett Station Partners, LLC is a Delaware Limited Liability Company with its principal executive office located at 8010 Stage Hills Boulevard, Bartlett, Shelby County, Tennessee 38133, and was Plaintiffs' "employer" as that term is defined under the FLSA.  In the alternative, Defendant Garnett Station Partners, LLC was Plaintiffs' "joint employer" and/or "integrated employer" at all times mentioned herein. According to the Tennessee Secretary of State, Garnett Station Partners, LLC is not registered to do business in Tennessee. Garnett Station Partners, LLC can be served process through its

registered agent: The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, New Castle County, Delaware 19801.

9.     Defendant Cambridge Franchise Holdings, LLC is Delaware Limited Liability Company with its principal executive office located at 8010 Stage Hills Boulevard, Bartlett, Shelby County, Tennessee 38133, and was Plaintiffs' "employer" as that term is defined under the FLSA.  In the alternative, Defendant Cambridge Franchise Holdings, LLC was Plaintiffs' "joint employer" and/or "integrated employer" at all times mentioned herein. Cambridge Franchise Holdings, LLC currently owns and operates 120 Burger King Restaurants.[1] Cambridge Franchise Holdings, LLC can be served process through its registered, agent: CT Corporation System, 800 S. Gay Street, Knoxville, Knox County, Tennessee 37929-9710.

10.    Defendant Mirabile Investment Corporation, doing business as MIC, is a Tennessee Limited Liability Company with its principal executive office located at 8010 Stage Hills Boulevard, Bartlett, Shelby County, Tennessee 38133, and was Plaintiffs' "employer" as that term is defined under the FLSA.  In the alternative, Defendant MIC was Plaintiff's "joint employer" and/or "integrated employer" at all times mentioned herein. MIC can be served process through its registered agent: Kevin Whitton, 8010 Stage Hills Boulevard, Bartlett, Shelby County, Tennessee 38133-4032.

11.    Defendant Ray Meeks is a partner along with Defendants Alex Sloane and Matt Perelman in Garnett Station Partners, LLC, as well as the CEO of Garnett Station's Burger King Division.  According to Garnett Station Partners, LLC's website, Defendant Meeks has been a Burger King Franchisee since 1984 and is a member of the New South Coalition

---

[1] *See http://www.garnettstation.com/burger-king*

4

Burger King Franchisee Association and the Mid-South Gulf Association. Defendant Meeks was a charter member of both the Virginia and the North Carolina Franchise Associations and served in several capacities in both of those organizations. Additionally, Defendant Meeks has served as Vice Chairman of the National Franchise Association, which represents Burger King Franchisees across the United States and Canada and has been the past recipient of several Burger King Awards such as the Franchisee of the Year for the Richmond Area Market, The Burger King Development, Excellence, and Leadership Award, the Burger King National Award of Excellence, and the Burger King National Brand Leadership Award. As the owner of Carolina Quality, LLC, Defendant Meeks operated twenty two (22) Burger Kings in North Carolina, Virginia, Tennessee, Alabama and Mississippi. In 2014, Garnett Station Partners, LLC partnered with Meeks to grow his business.  As of the filing of this Complaint, Cambridge Franchise Holdings, LLC is among the fastest growing and most profitable Burger King franchisees.[2] Defendant Meeks is an adult individual and believed to be a resident of the State of Tennessee or the State of North Carolina and who, at times relevant to this Collective Action Complaint, has been the CEO of Defendant Cambridge Franchise Holdings, LLC. Upon information and belief, Meeks is also a Principal and/or General Partner of Defendant Garnett Station Partners, LLC, a private equity firm that wholly owns Cambridge Franchise Holdings, LLC and Mirabile Investment Corporation. Defendant Meeks exercised operational control over significant aspects of the corporate Defendants' day-to-day functions and is therefore individually liable for any violation of the FLSA.

[2] *See http://www.garnettstation.com/burger-king;* and
*http://www.garnettstation.com/burgerkingteam/*

Defendant Meeks may be served for purposes of process at 8010 Stage Hills Boulevard, Bartlett, Shelby County, Tennessee 38133.

12.    Defendant Tim Furr has been COO of Cambridge Franchise Holdings, LLC since 2014. According to Garnett Station Partners, LLC's website, prior to his role at Cambridge Franchise Holdings, LLC, Tim Furr was at Burger King Corporate for 10 years serving in several executive capacities, including Director of Franchise Performance for the North East Region of the United States. Defendant Furr is responsible for running the day to day operations of Cambridge Franchise Holdings, LLC's existing restaurants and integrating acquisitions new development. Defendant Furr exercised operational control over significant aspects of the corporate Defendants' Burger King franchises day-to-day functions and is therefore individually liable for any violation of the FLSA.  Defendant Furr is an adult individual and believed to be a resident of the State of Tennessee. Defendant Furr may be served for purposes of process at 8010 Stage Hills Boulevard, Bartlett, Shelby County, Tennessee 38133.

13.    Defendant Joseph Mirabile was the principal of Defendant Mirabile Investment Corporation until 2014 when Garnett Station Partners, LLC acquired MIC and Dr. Mirabile's interest in MIC's Burger King franchises. Mirabile is believed to be a resident of the state of Tennessee. Upon information and belief, Mirabile exercised operational control over significant aspects of some of the Burger King restaurants at issue in this collective action lawsuit and is therefore individually liable for violations of the FLSA that occurred during his tenure.

14.    Defendant Matt Perelman is a Managing Partner and Co-founder of Garnett Station Partners, LLC. Defendant Perelman exercised operational control over significant aspects

of the corporate Defendants' day-to-day functions and is therefore individually liable for any violation of the FLSA. Defendant Perelman is an adult individual and believed to be a resident of the District of Columbia.

15.    Defendant Alex Sloane is a Managing Partner and Co-founder of Garnett Station Partners, LLC. Defendant Sloane exercised operational control over significant aspects of the corporate Defendants' day-to-day functions and is therefore individually liable for any violation of the FLSA. Defendant Sloane is an adult individual and believed to be a resident of the District of Columbia.

16.    Defendant Chris Schniepp is the Vice President of Operations at Cambridge Franchise Holdings, LLC. Defendant Schniepp is an adult individual and believed to be a resident of St. Louis, Missouri. Defendant Schniepp, as Vice President of Operations for Cambridge Franchise Holdings, LLC, exercised operational control over significant aspects of the corporate Defendants' day-to-day functions and is therefore individually liable for any violation of the FLSA.

17.    Defendants constitute an integrated enterprise because their related activities (i.e. jointly owning and operating Burger King franchised restaurants during all time material herein) performed (either through unified operation or common control) by any person or persons [are] for a common business purpose as that term is defined in the Fair Labor Standards Act, 29 U.S.C §203(r).

V.    **ALLEGATIONS**

18.    Defendants own and operate approximately 120 Burger King Restaurants. Upon information and belief, Defendants owned and operated Burger King franchised restaurants in several states across the U. S., including Tennessee, Mississippi, North

Carolina, South Carolina, Virginia, Arkansas, Kentucky and Indiana during all times relevant to this Collective Action Complaint.

19.    The primary function of Defendants' Burger King franchised restaurants is to prepare and sell food and beverage items to its customers.

20.    Defendants are and/or have been the "employer" of the Plaintiffs and those similarly situated within the meaning of 29 U.S.C. § 203(d), during all times relevant to this Collective Action Complaint.

21.    Plaintiffs and all other similarly situated persons are current or former hourly-paid Shift Leaders of Defendants' Burger King franchised restaurants.

22.    Defendants employed Plaintiffs and those similarly situated and was responsible for establishing and administering pay policies and practices, including pay classifications and overtime pay rates, during all times relevant to this Collective Action Complaint.

23.    At all times material, Defendants have had centralized plans, policies and practices (scheme) of establishing and administering pay practices for its employees classified as hourly-paid Shift Leaders.

24.    Plaintiffs and those similarly situated are or have been "employees" of Defendants as defined by Section 203(e)(1) of the FLSA and, worked for Defendants within the territory of the Unites States within three (3) years preceding the filing of this lawsuit and, during all times material to this Collective Action Complaint.

25.    Defendants have been an enterprise engaged in commerce or in the production of goods for commerce as defined by Section 203(s)(1) of the FLSA, with annual revenue in excess of $500,000.00 during all times material to this Collective Action Complaint.

26.   At all times material to this action, Defendants have been subject to the pay requirements of the FLSA because they are an enterprise in interstate commerce and their employees are engaged in interstate commerce.

27.   During part of the statutory period, Defendants' Burger King franchised restaurants employed individuals classified as hourly-paid Shift Leaders whose primary duties are non-managerial in nature and whose principal duties are to prepare and serve food items to Defendants' customers.

28.   Defendants have and continue to employ a uniform and centralized electronic time keeping system for tracking and reporting employee hours worked at each of their Burger King franchised restaurants.

29.   During the period of time Plaintiffs and class members have been paid hourly Shift Leaders. Defendants have had a centralized plan, policy and practice of inducing, requiring, forcing, encouraging, expecting and, suffering and permitting, Plaintiff's to work in excess of 40 hours per week but editing their compensable time to less than the time they actually worked (within weekly pay periods during all times relevant to this action) in order to stay within the "budgeted labor" cost allotted for each of their Burger King franchised restaurants. Accordingly, Plaintiffs' and Class Members' "edited out/time shaving" claims are unified by a common theory of Defendants' FLSA statutory violations.

30.   During the period of time Plaintiffs and class members have been paid hourly, Defendants had a centralized plan, policy and practice (scheme), as driven by their executives and Directors of Operations, of strictly enforcing restricted hours of compensable work per day and per week ("budgeted labor") by providing special and

favorable recognition to such executives and Directors of Operations to stay within or below such "budgeted labor" on the one hand and, threatening and impacting the job security of such executives and Directors of Operations who failed to stay within such "budgeted labor" on the other hand, even though such budgeted labor was/is inadequate to meet the operational demands and needs of its restaurants which "budgeted labor" policy, in turn caused defendants' executives and Directors of Operations to expect, encourage, entice, condone, induce, permit and/or require Plaintiffs and those similarly situated to perform unpaid "off the clock" work, as described herein. Accordingly, Plaintiff's' and Class Members' "off-the-clock" claims are unified by a common theory of Defendants' FLSA statutory violations.

31.   At all times relevant to this action and, pursuant to Defendants' centralized, unified and uniform "budgeted labor" plans, policies and practices, Defendants have expected, encouraged, induced, condoned, required and, suffered and permitted, Plaintiffs and others similarly situated to perform work "off the clock" without compensating them at the applicable FLSA overtime compensation, including the following "off the clock" compensable time:

(a)  Expecting, encouraging, inducing, condoning, requiring and, suffering and permitting, Plaintiffs and others similarly situated to perform job duties "off the clock" <u>before</u> clocking-in to their scheduled shifts;

(b)  Expecting, encouraging, inducing, condoning, requiring and, suffering and permitting, Plaintiffs and others similarly situated to perform job duties (including the processing and submitting of "end-of-day" reports) "off the clock" <u>after</u> clocking-out of their scheduled shifts;

(c)  Expecting, encouraging, inducing, condoning, requiring and, suffering and
permitting, Plaintiffs and others similarly situated to conduct and receive
job-related training "off the clock";

(d)  Expecting, encouraging, inducing, condoning, requiring and, suffering and
permitting, Plaintiffs and others similarly situated to attend mandatory
meetings "off the clock" and,

(e)  Requiring, forcing and inducing Plaintiffs and others similarly situated to clock-out
for 30 minute meal breaks, yet continue to perform their job duties during such meal
breaks.

32.     As a result of such uncompensated "off the clock" work time, Plaintiffs and others
similarly situated are entitled to and, seek to recover, from Defendants compensation for
such "off the clock" work at least the required FLSA minimum wage rate of pay and any
related overtime compensation for such "off the clock" claims at the applicable FLSA
overtime rate of pay during, all relevant times to this action.

33.     Defendants' centralized timekeeping records do not reflect the aforementioned "off the
clock" hours of Plaintiffs and others similarly situated.

34.     As a consequence of Defendants' timekeeping records not reflecting actual hours worked,
when the unpaid "off the clock" work time is added to their recorded time, Plaintiffs and
other members of the class who have worked in excess of forty (40) hours per week,
within weekly pay periods during all times relevant, are entitled to and, hereby seek, a
recovery of all such unrecorded overtime work at one and one-half times their regular
hourly rate of pay for all hours in excess of forty (40) within said weekly pay periods, as
required by the FLSA.

35.     The net effect of Defendants' aforementioned plan, policy and practice of editing out Plaintiffs and class members' compensable time and, expecting, encouraging, inducing, condoning, requiring and, suffering and permitting, Plaintiffs and others similarly situated to work "off the clock" without being compensated for such work is that Defendants willfully failed to pay Plaintiffs and other members of the class for all straight time work, including minimum wages and premium pay for overtime work in order to save payroll costs and payroll taxes.

36.     As a consequence, Defendants have violated the FLSA and, thereby have enjoyed ill-gained profits at the expense of Plaintiffs and others similarly situated.

37.     Plaintiffs and others similarly situated are entitled and, hereby seek, to recover back pay, liquidated damages, attorneys' fees, interest, and other cost, fees and expenses from Defendants for all such unpaid "edited out/shaved" and "off the clock" compensable time, that is available under the FLSA.

38.     Although at this stage Plaintiffs are unable to state the exact amount owed to them and other members of the class, they believe such information will become available during the course of discovery. However, when an employer fails to keep complete and accurate time records, employees may establish the hours worked solely by their testimony and the burden of proof of overcoming such testimony shifts to the employer.

## VI.     COLLECTIVE ACTION ALLEGATIONS

39.     Plaintiffs brings this action on behalf of themselves and the class as a collective action pursuant to the FLSA, 29 U.S.C. §§ 206, 207, and 216(b).

40.     The claims under the FLSA may be pursued by those who opt-in to this cause of action under 29 U.S.C. § 216(b).

41.    The members of the class are so numerous that joinder of all other members of the class
       is impracticable. While the exact number of the other members of the class is unknown to
       Plaintiffs at this time and, can only be ascertained through applicable discovery, Plaintiffs
       believe there are at least hundreds of individuals in the class.

42.    The claims of Plaintiffs are typical of the claims of the class. Plaintiffs and the other
       members of the class work or have worked for Defendants' Burger King franchised
       restaurants and were subject to the same operational, compensation and timekeeping
       policies and practices, including not being paid for all their aforementioned  "edited
       out/shaved" and "off the clock" compensable time at the applicable FLSA minimum
       wage and overtime rates of pay.  As a result, Plaintiffs and Class Members' "edited
       out/time shaving" and "off-the-clock" claims are unified by common theories of
       Defendants' FLSA statutory violations.

43.    Common questions of law and fact exist as to the class which predominate over any
       questions only affecting other members of the class individually and include, but are not
       limited to, the following:

   •    Whether Plaintiffs and other members of the class were expected, encouraged,
        induced and/or required to perform work without compensation;

   •    Whether Defendants condoned and/or, suffered and permitted, Plaintiffs and other
        members of the class to perform work without compensation;

   •    Whether Defendants failed to pay Plaintiffs and other members of the class all
        applicable straight time and minimum wages for all hours worked;

   •    Whether Defendants' failed to pay Plaintiffs and other members of the class all
        overtime compensation due them for all hours worked in excess of forty (40)
        hours per week within weekly pay period during all times relevant;

- Whether Plaintiffs and the class worked over forty hours in weekly pay periods, during relevant times herein, without receiving overtime compensation for such hours.

- The correct statutes of limitations for the claims of Plaintiffs and other members of the class;

- Whether Plaintiffs and other members of the class are entitled to damages, including but not limited to liquidated damages, and the measure of the damages; and,

- Whether Defendants are liable to Plaintiffs for interest, attorneys' interest, fees, and costs.

44.    Plaintiffs will fairly and adequately protect the interests of the class as their interests are aligned with those of the other members of the class. Plaintiffs have no interests adverse to the class and, Plaintiffs have retained competent counsel who are experienced in collective action litigation.

45.    Collective action mechanism is superior to the other available methods for a fair and efficient adjudication of the controversy. The expenses, costs, and burden of litigation suffered by individual other members of the class in a collective action are relatively small in comparison to the expenses, costs, and burden of litigation of individual actions, making it virtually impossible for other members of the class to individually seek address for the wrongs done to them.

46.    Plaintiffs and other members of the class have suffered and will continue to suffer irreparable damage from the unlawful policies, practices, and procedures implemented by Defendants.

# COUNT I

## FLSA VIOLATIONS – UNPAID MINIMUM WAGES

### (On Behalf of the Class)

47.   Plaintiffs on behalf of themselves and the class, repeat and re-allege Paragraphs 1 thru 46 above, as if they were fully set forth herein.

48.   At all relevant times, Defendants have been and continue to be an employer engaged in interstate commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

49.   At all relevant times, Defendants have employed (and/or continue to employ) Plaintiffs and each of the other members of the class within the meaning of the FLSA.

50.   At all times relevant and based on the aforementioned allegations, Defendants have had a uniform plan, policy and practice of willfully failing to pay Plaintiffs and other members of the class for all hours worked (including the aforementioned unpaid "edited out/shaved" and "off the clock" compensable time), at the applicable FLSA minimum wage and overtime compensation rates of pay.

51.   Defendants' uniform plan, policy and practice of willfully failing to pay Plaintiffs and members of the class at least the applicable FLSA minimum wage rates of pay and, the applicable FLSA overtime compensation at one-half times their regular hourly rate of pay for all hours in excess of forty (40) within weekly pay periods during all times relevant for all the aforementioned: "edited out" and "off the clock" work time, have violated the FLSA.

52.   Plaintiffs' and class members' unpaid "edited out/shaved" and "off the clock" claims are unified by common theories of Defendants' FLSA violations.

53.   At all times relevant, Defendants have had actual and/or constructive knowledge of willfully refusing to pay Plaintiffs and other members of the class for all hours worked

(including the aforementioned unpaid "edited out/shaved" and "off the clock" compensable time), at least at the applicable FLSA overtime rates of pay.

54.    Defendants' conduct constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

55.    Defendants do not have a "good faith" basis for their aforementioned FLSA violations.

56.    Due to Defendants' willful and lack of a good faith basis for their FLSA violations, Plaintiffs and the other members of the class are entitled and, hereby seek, to recover from Defendants compensation for the aforementioned unpaid wages, an additional equal amount as liquidated damages, as well as interest, reasonable attorneys' fees, costs, and disbursements relating to this action for the three-year statutory period under the FLSA, 29 U.S.C. § 216(b).

## COUNT II

## FLSA VIOLATIONS – UNPAID OVERTIME COMPENSATION
### (On Behalf of the Class)

57.    Plaintiffs, on behalf of themselves and other members of the classes, repeat and re-allege Paragraphs 1 through 56 above as if they were set forth herein.

58.    At all times relevant herein, Defendants have been and continue to be an employer engaged in interstate commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

59.    At all times relevant herein, Defendants have employed (and/or continue to employ) Plaintiffs and each of the other members of the class within the meaning of the FLSA.

60.    At all times relevant herein, Defendants have had a uniform plan, policy and practice of willfully failing to pay Plaintiffs and other members of the class appropriate overtime compensation for all of the aforementioned unpaid "edited out/shaved" and "off the

clock" compensable time, in excess of forty hours per week within applicable weekly pay periods.

61.    During all times relevant, Defendants' uniform plan, policy and practice of willfully failing to pay Plaintiffs and members of the classes at least the required one and one-half times their regular hourly rate of pay for all worked performed (including the aforementioned unpaid "edited out/shaved" and "off the clock" compensable time) in excess of forty (40) within applicable weekly pay periods, result in their claims being unified by common theories of FLSA violations.

62.    At all times relevant herein, Defendants have had actual and/or constructive knowledge of willfully refusing to pay Plaintiffs and other members of the classes for all hours worked (including the aforementioned unpaid "edited out and shaved time" and "off the clock" compensable time.)

63.    As a result of Defendants' willful failure to compensate Plaintiffs and other members of the classes at a rate of, not less than one and one-half times the regular rate of pay for hours in excess of forty (40), within weekly pay periods during all times relevant, it has violated and (continues to violate) the FLSA, 29 U.S.C. § 255(a).

64.    Defendants do not have a good faith basis for their aforementioned FLSA violations

65.    Due to Defendants' willful and, lack of a good faith basis, for their FLSA violations, as described above, Plaintiffs and the other members of the class are entitled and, hereby seek, to recover from Defendants compensation for unpaid overtime wages, an additional equal amount as liquidated damages, as well as interest, reasonable attorneys' fees, costs, and disbursements relating to this action for the three-year statutory period under the FLSA, 29 U.S.C. § 216(b).

## <u>PRAYER FOR RELIEF</u>

Whereas, Plaintiffs, individually, and/or on behalf of themselves and all other similarly situated members of the classes, request this Court to grant the following relief against Defendants:

A.  Designation of this cause as a collective action on behalf of the classes and promptly issue notice pursuant to 29 U.S.C. § 216(a), apprising class members of the pendency of this action and permitting other members of the class to assert timely FLSA claims in this action by filing individual Consents under 29 U.S.C. § 216(b);

B.  On Count I, an award of compensation for unpaid minimum wages to Plaintiffs and other members of the class;

C.  On Count II, an award of compensation for unpaid overtime wages to Plaintiffs and the other members of the classes at the applicable FLSA overtime rate of pay.

D.  On Counts I and II an award of liquidated damages to Plaintiffs and other members of the classes;

E.  On Counts I and II an award of prejudgment and post-judgment interest at the applicable legal rate to Plaintiffs and other members of the classes;

F.  On Counts I and II an award of costs, expenses, and disbursements relating to this action together with reasonable attorneys' fees and expert fees to Plaintiffs and other members of the classes;

G.  On Counts I and II a ruling that the three-year statutory period for willful violations under the FLSA shall apply in this action, and

H.  Such other general and specific relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a **trial by jury** on all issues so triable.


Dated:   December 8, 2017

                                      Respectfully Submitted,

                                       */s/Gordon E. Jackson*
                                       Gordon E. Jackson (TN BPR #08323)
                                       James L. Holt, Jr. (TN BPR #12123)
                                       J. Russ Bryant (TN BPR #33830)
                                       Paula R. Jackson (TN BPR #20149)
                                       **JACKSON, SHIELDS, YEISER & HOLT**
                                       Attorneys at Law
                                       262 German Oak Drive
                                       Memphis, Tennessee  38018
                                       Tel:  (901) 754-8001
                                       Fax:  (901) 759-1745
                                       *gjackson@jsyc.com*
                                       *jholt@jsyc.com*
                                       *rbryant@jsyc.com*
                                       *pjackson@jsyc.com*

                                       *Attorneys for Named Plaintiffs, on behalf of*
                                       *themselves and all other similarly situated current*
                                       *and former employees*